Good morning. May it please the Court. Tom Dupree on behalf of the Appellant HVB. We believe that the District Court erred in two fundamental respects. The first is that the District Court erroneously granted summary judgment in the plaintiff's favor, despite the existence of a disputed question of fact as to whether the plaintiff knew that the transaction in question was not a legitimate business loan, as he claims, but rather a fraudulent tax shelter. The second respect in which we submit the District Court erred is in refusing to dismiss the plaintiff's RICO claim. We showed that because a critical necessary step in this tax shelter transaction involved the sale of securities, it was squarely barred under RICO, as well as the Supreme Court's decision in Zanford and this Court's decision in Swartz. I'd like to begin with the summary judgment issue. This case really presents a classic question of intent, a classic dispute over credibility. We submitted extensive evidence in the record demonstrating that the plaintiff knew that this was not a legitimate business loan. The District Court rejected this evidence. The District Court reasoned that our evidence was circumstantial and did not amount to direct knowledge on the part of the plaintiff. In fact, the District Court seemingly acknowledged that we had submitted sufficient evidence from which a jury could permissibly have concluded that the plaintiff had to know of the fraud. On page 14 of the excerpts of record, the District Court acknowledges that our expert report, and I'm quoting, can be read to insinuate that the plaintiff must have known that Cards was designed solely to deliver improper tax benefits. And under a straightforward application of this Court's decision in Tucker, which we cite in our briefs, that this Court holds that intent in a tax case may be proved by showing that the defendant knew or must have known that his returns were false. We submitted ample evidence from which a jury could reasonably have concluded that the plaintiff knew this was a fraud. I'd also point out that the plaintiff has acknowledged that the plaintiff One were the documents, the correspondence, and declarations and so forth from which you argued in your brief that a jury could infer that there was knowledge. The other evidence you submitted was the report of the expert who went over the same documents, but also expressed an opinion that Reznor must have known that this was a fraud in the transaction. So when you talk about the evidence, would you distinguish what you're talking about? Absolutely, Judge Alito. I think Your Honor has correctly characterized the report. What our expert did was review the factual record and explain, just set the table essentially, for the jury to reach the conclusion based on the predicate facts, discuss an expert report that Mr. Reznor knew the transaction was a fraud. So Your Honor is correct in the sense that we don't need the expert report in order to take this case to a jury. The expert report was merely our way of pulling these facts together and explaining them. But certainly, we would survive summary judgment even absent the expert report. But I do think the expert report was probative, and it certainly was easily a sufficient basis for us to take the case to the jury. I'd also like to point out that there's no dispute in this case that the plaintiff acknowledges that he reviewed the documents in this transaction. His brief states that he conducted due diligence on the documents before deciding to enter into the transaction. And, of course, it bears noting that the plaintiff in this case is not an ordinary taxpayer in the sense that this is an individual who's an exceedingly sophisticated and knowledgeable businessman. He built what became the world's third most frequently visited website. As public reports have indicated, when he sold his stock, he amassed $100 million from the stock sale. So this is an exceedingly sophisticated businessman who paid attention to every step of this transaction. And as we've shown, there were so many red flags surrounding this transaction that a jury could easily have concluded either that Mr. Reznor knew or at a minimum must have known that this was not a legitimate business loan, but rather a fraudulent tax shelter. I think in reaching a contrary conclusion, the district court impermissibly held us to a heightened legal standard by demanding direct evidence of knowledge on Mr. Reznor's part. The district court further erred by drawing inferences in favor of the moving party. Certainly, Mr. Reznor can argue that a jury could permissibly have concluded that he was an innocent player in all of this and that he was a victim. That's his argument. But I certainly think it's a question that the jury can and should have been allowed to resolve on the facts of this case. The jury should have been allowed to resolve on all questions of credibility, questions of intent that are at the heart of this lawsuit. I'd like to address our second argument, which is our argument that the RICO claim should have been dismissed at the outset. The RICO claim is clearly barred under the PSLRA, which, as this Court knows, is mandatory. Ginsburg. I have a little trouble understanding how you get there, because, sure, there were securities that were pledged as collateral. Could have been real estate, could have been cash, I think it was in part cash, could have been anything. Certainly, at least as I read the record, there's nothing to show that the transaction was itself in connection with the sale of the security. Well, Judge Rodman, a couple of points on that. The first is the argument that Your Honor just articulated, that this transaction just happened to involve securities, but didn't require the involvement of securities. Well, I mean, it just the securities, based on what I can tell, had absolutely nothing to do with the transaction, except the fortuity that he happened to use a Smith-Barney account as collateral. But he could have used cash. Nobody cared. I mean, he could have used cash, he could have used real estate, could have used whatever he owned. But they used a painting. I mean, Judge Rodman, the quickest answer to Your Honor's question is that was exactly the argument that was advanced in the Swartz case. That was the case this Court decided involved the Blitz tax shelter, which was similar in the sense that it involved the steps of transactions. And that was precisely the argument that the taxpayer made in Blitz, where he said, this transaction just happened to involve securities, but it wasn't required. And this Court squarely rejected that argument. And I think that this Court's decision in Swartz is strongly supported by the Supreme Court's decision in Zanford. In Zanford, the Supreme Court said, and I'm quoting, "...it is enough that the scheme to defraud and the sale of securities coincide." And in this case, the sale of securities was an integral step in the process. It was a necessary step. The fraud could not have been affected absent the plaintiff's pledge of securities. And the argument that he makes that, well, I didn't have to use securities, I could have used cash or I could have used something else, that is immaterial under Swartz. The question is, did the transaction involve securities? Did the sale of securities occur during the fraudulent process? And it's abundantly clear that the answer to that question is yes. It was a necessary step in this process, Your Honor. So we think that under a square application of Zanford and Swartz, which we submit, is highly relevant, because precisely the same arguments, and we actually quoted from the briefs in the Swartz case to show what arguments were presented to the panel, they are the same arguments that Mr. Reznor is advancing in this Court that were decisively rejected in Swartz. Breyer, turn to a slightly different subject, or a different one. As I read a little bit of the opening brief in your reply brief, you also make, but you don't seem to be arguing it now, causation issue, because I think there is a real question of, but for approximate causation, since the victim is the victim, was the United States, he was not the victim. And I think under RICO, he has to somehow prove that there's a relationship between the fraud and him as a victim. Judge Trigger, that's exactly right. We think there is a serious causation problem in the plaintiff's argument. We did not. So why am I raising it rather than you? Well, simply because I think that it's encapsulated within the issue that we were discussing as far as summary judgment. In other words, our position as far as causation goes is that the causal chain is broken by virtue of the plaintiff's knowledge of the fraud. That's our argument, is that the plaintiff cannot claim that HVB's conduct caused his harm. Well, my argument, as I understand, is a little bit broader. You don't have to prove. He has to prove he was a victim of the fraud. You know, he didn't have to necessarily know what they were up to, but how is he a well, I'll ask the other side, how is he a victim? I think Your Honor's concerns are well taken, and I would encourage the Court to question my adversary on this, because I do think that is a fundamental flaw in this case, is that they have a problem on causation. I think the fact that the plaintiff, there was an ample basis for the jury to conclude that the plaintiff knew exactly what was going on, severs any possible causal link. The fact is HVB's conduct did not cause plaintiff's harm in any sense, under any theory, under any approach. So I think Your Honor is exactly right, that they have problems on the causation front, regardless of whether it's viewed as a pure question of causation or in the context of the summary judgment order. But I agree 100 percent with Your Honor's concerns on that front. I'd finally just like to highlight some of the facts that we do think supports the jury drawing an inference of knowledge. For one thing, Mr. Reznor paid $4 million in fees for what was a $7 million loan. For another thing, he assumed 39 or he assumed or claimed to have suffered a $39 million loss based on his purported assumption of joint and several liability in a transaction that was essentially circular. Mr. Reznor, like all taxpayers and cards, this is the central deceptive feature of the tax shelter, was never in jeopardy of losing all of that money, because the loan was fully collateralized. It was collateralized through the circular transaction involving the creation of a foreign shell LLC that was run by people that Mr. Reznor did not know and had never met. This was clearly not an ordinary business transaction. Under the terms of this loan, Mr. Reznor agreed to pay what would be potentially an 147 percent interest rate. That would make absolutely no sense if you were talking about an ordinary taxpayer, and it certainly makes no sense when you're talking about one of the most sophisticated businessmen in the United States who carefully reviewed all of the transactional documents at issue. So for those reasons, we respectfully submit that this Court entered judgment in HVB's favor on the RICO claim and remanded for trial on the UCL claim. I'd like to reserve the remainder of my time for rebuttal. Sotomayor. Mr. Falk, good morning. Good morning, Your Honor. May it please the Court, I'm Jerry Falk for FLE. Let me begin with the question raised by Judge Trager on causation. The undisputed fact is that if the bank here had not participated in the scheme which they admit was an attempt to defraud the government, not successful because the IRS was awake and alert, but they – that was the attempted fraud on the government. If they had not participated in that scheme, if the scheme had not gone forward, then Mr. Reznor would not have been advised by his advisors to enter into the transaction, would not have paid the fees that he paid, et cetera, and that is sufficient to establish causation. Yet there is your but-for causation. The argument has sort of metamorphosized. Initially, the argument that the bank made was that there was no reliance. And we responded that under the Supreme Court's decision in Bridge v. Phoenix bond and indemnity, reliance is not an element of a civil reco claim. And so in their reply brief, HVB changed the term but made the same argument, phrasing it as a question of causation. I would point out that in Bridge, the Supreme Court went on to say that the lack of reliance could not be – that argument about the lack of reliance could not be the cause of an argument about causation, and we quote that passage from Bridge on page 26 of our brief. So I think that is the answer to the causation. It may explain, Judge Kroger, why counsel didn't make that argument to you, because he knows a weak argument very well. Ginsburg. Mr. Falk, regardless of who's got the burden of proof and regardless of whether you call this causation or whether you cause – call it an imperi delecto kind of defense, it seems very hard to look at the record and not see a triable issue about whether Reznor, having read all the documents himself, knowing that it's a one-year, you know. Let me go to that directly. That was where I wanted to start. I'm sorry to have never heard of you. No, no, I'm happy to change my batting order. May I confess to you that when I first got this case, I had the exact same reaction to it, and I thought, boy, I don't know how I can put together a correct argument on this. I've at least persuaded myself. Let me see if I can explain why in a coherent way. I think the correct legal term is imperi delecto, not causation. And imperi delecto, you would infer from HVB's brief, would be triggered if the plaintiff had any involvement in illegality whatsoever. But that's not what the cases tell us. The Supreme Court's decision in Bateman-Eichler instructs us that imperi delecto in law means what it means in a lack of substantially equal fault. And so that's the lens that you have to look at the evidence through. Now, let's begin with the evidence of what HVB's involvement here is, and then I'll talk about Mr. Resner's. And we haven't any difficulty in knowing that because they entered into the deferred prosecution agreement and then also answered the request for admissions and the discovery responses. So their position, their admissions are on the record and now indisputable. They admit that they participated with lawyers and experts in the creation of documentation that contained false representations as to the term of the loan and that were designed to create the impression in the mind of a sophisticated tax professional that this was a 30-year loan. Yeah, because no reason in the world why anybody, never mind a sophisticated businessman, would have done it because it wouldn't have done him any good. What did him good was to be able to get out of the loan in a year or, as it happens, two years in order to get the tax loss that he knew he had to get. No, no. It didn't work if it was a one-year loan. It only, it made sense, it only made sense if analyzed as a 30-year loan. And I think the bank will agree with you. Look, I don't disagree with you. It only made sense if it were. The fact is it wasn't. And so, and so, but here's the thing. We don't have to agree on that. My point is, isn't that, even just that, a triable issue of fact? That's the point, Judge Rimer, that I'm addressing. Okay. The critical fact here is that the bank has admitted that it drafted documents that, on their face, A, were intended to say this is a 30-year loan, and B, did, in fact, say, and I want to refer you to the answer to request for admission 27, and it's repeated, the exact same language appears on 66 and 67, but it's repeated since they're the same, I'll just read from one. This is a 2ESER 242. HVB admits that its loan documents for plaintiff's cards transaction reflected a 30-year loan term. Now, they, and they go on to say that the, that the documents which they prepared falsely stated that the loans were 30-year loans. Now, that admission, which is binding, and I cannot relitigate that now in this case, that, that admission says if you look at the documents, it's a 30-year loan. It doesn't say if you look at the documents, you're on notice that it's really not a 30-year loan. It says if you look at the documents, it's a 30-year loan. Now, that's what their involvement was. Now, by contrast, you have Mr. Resnick. Now, counsel can hype this up and talk about how sophisticated he is. He's a sophisticated man in certain, you know, in the high-tech world. That doesn't make him a tax professional. It doesn't make him an accountant. It doesn't make him a lawyer. And I dare say that none of the lawyers here, and I won't include the Court, but none of the lawyers here could really explain this transaction. I know I, I would, I could do it, but it would be a real huff-and-puff operation. This is complicated, and these transaction documents are tough reading. They, there is a little world of people who do these kinds of, of transactions who are tax experts, who can understand them. I don't think even most lawyers can. And you have an admission that these documents were designed to fool the professional at the IRS, and you have Mr. Resnick, who is not a tax professional, and not an accountant, and not a lawyer, who gets these documents, and who gets an opinion of Sidley and Austin, one of the nation's leading law firms, that is a, that a, a, a tax opinion that says this is a valid transaction. And he gets a report from his own investment advisor, the folks at mycfo.com, who tell him that they have analyzed this thing very thoroughly, that it has financial advantages, that it has economic substance, that the effective interest rate on the transaction, assuming 30 years, is less than the, than the interest rate that he currently pays on his margin loans, which this would replace, that it has economic substance, and they recommend that he do it. Now, you can make the argument that with all of that, he should have known, this is too good to be true, or whatnot, but that doesn't get you to substantially equal fault with the folks who design a fraud, a fraudulent transaction with the intent of fooling tax professionals at the IRS. It may get you, God, I wish I had been smarter. I wish I had been more diligent. You could, you could argue maybe he should have figured it out. I actually don't believe that, but maybe you could get there. But it doesn't get you, he did know, and he's as culpable as the, as the sophisticated people who made millions of dollars in fees by designing a fraudulent tax transaction that they sold and, and used to fool people at, at mycfo.com. And you mustn't forget that the very advisors who advised him were also fooled. I don't know that that's true of Sidley and Austin. They were found to be co-conspirators in the, in the fraud. Are you really saying that a jury could not, after going through the various aspects of the transaction, conclude that it, A, he admitted he didn't know whether it had any economic substance other than the tax benefits. And there were so many aspects of this with red flags that it made no sense other than the tax. I don't think you have to be a sophisticated accountant to, an ordinary lay person would understand. There were so many aspects of this transaction that it had made no economic sense except for the tax. Actually, that's not what his advisors told him. I mean, that is not what his advisors told him. It's what he said. He didn't know whether it had. He testified in his deposition that he didn't know whether the transaction was attractive to him absent the tax benefits. Now, he is talking about a sophisticated businessman, which you, as you describe him, and he can't figure that out? He had, he had advisors who told him that he did. He, of his own knowledge, may not have been able to. Well, let me, you know, we're dealing on a summary judgment motion here. Maybe I'm wrong, but it seems to me that the burden of proof that he didn't know is on his end. He has to carry the claim. It's an affirmative defense. Sorry. The burden is to prove the elements. And there is no element. The elements that he, that it had, that it had some economic substance to it, and that they couldn't, the jury can't find that based on all this he's not believable? Judge, it, it is not an element of the claim. With all respect, it is not an element of the claim that it had economic substance. It didn't have economic substance. That's why the IRS disallowed it. But he And that he was aware of it. He, that was not his burden. His burden. All right. If it's not his burden, the jury still couldn't conclude that they had met the burden on the basis of all this? Well, I have to come back to the test. Does he have substantially equal fault? And I don't know what that means. Well. If he knows about it and they prove that he was well aware of what it was, why isn't that substantially equal fault? There is no evidence that he was well aware. There is evidence. But that's your reading of the record. I think a jury, I think the record could be read otherwise. The evidence. At least it would create a triable issue of fact. May I just summarize that evidence? There is evidence that he was never told by anybody that this was not a 30-year loan. That's Are you saying that the Sidley and Austin letter didn't say otherwise? Yes, I am saying that. It certainly said that there was The way I read it, it calls flat-out attention to the Ability of the bank to terminate the loan early. That's disclosed. Yes. But it was – but his belief was that that was for if economic circumstances changed. No one ever told him that they had a reserved intention from the get-go to pull the plug on that loan in one year. Yeah. As long as he knows that the plug is pullable within one year. And in fact, he pulled it. Well, he didn't pull it. Well, it was pulled within two years. And in fact, it wasn't pulled after – it was pulled after two years. It was pulled after two years, arguably because he didn't want to pull it the second after. It wasn't his choice. It wasn't – so it wasn't – so the evidence is that he was told that it was a 30-year loan. That's what he was told. That was what he was told by his advisors. Why were they – why did they tell him that? Because they were told that by the bank, that who – that's admitted that they created these transaction documents in order to create the impression that it was a 30-year loan, not a one-year loan. That's their admission. Now, he was told that. Nobody told him the transaction didn't have economic substance. He was told by his advisors that it did. So the most you can get out of this is, it seems to me, an argument that you could – that he should have been able to figure it out. But there isn't enough evidence here that he, in fact, figured it out. There's no evidence of that at all. It's pure speculation. Kennedy, didn't he make a statement in a memo to Sidley Austin, I have determined that the facility represents the most attractive and efficient source of financing available at this time. And it's very clear that the margin of the effective interest rate on his present loan was 4.47, and on the other loan it would be 8.44. I mean, the jury couldn't take that and put it together that he knew? No. His – the advice that – and this is undisputed. The advice he got from his advisor is that this was a more – taking all of the factors into account, the tax rate from the – I'll provide you with this if I may, by letter, the citation. He was told that the tax – that the interest rate on the margin loan was higher than the interest rate on the cards loan would be. And I'm sorry, Judge, I don't have it at my fingertips. All right. What about the first statement? I have determined – I, meaning he – have determined the facility represents the most attractive and efficient source of financing available. The evidence on that is that this was written for him by my CFO and reflected the advice they had given him, and that is at 3 S.E.R. 775 to 76. So what that letter was is a playback of the advice he was given by his own people, and that is also confirmed by their declarations. But the people from my FCO said he well understood the transaction. They testify, or would testify. They testified that he – that they explained it to him, and they gave him a report. So he's on notice of what the transaction is, but the transaction on its face is a 30-year loan with legitimate – I just can't get away from the fact that everything you say may be true, and if a jury had found it, you have a slam dunk. But this judge has decided that he has reviewed it all and that there is no issue for a jury, and I find that very difficult. I understand. I've said what I can say. I just would ask you to consider it in the context of the applicable legal standard, which this is a guy who was sold the transaction, but the legal standard is substantially equal fault. And this is a guy who was sold the transaction by tax – sophisticated tax people and lenders who packaged a fraud, intending it to be a fraud, intending it to deceive everybody who read it. And they succeeded in fooling my CFO, who told Mr. Reznor to go into this deal, that it was advantageous economically, and he did it. Now, how does that get to the level of substantially equal? You may have all kinds of suspicions that he should have figured this out, but that's not the same as being of equal fault to people who have admitted the criminal activity that fooled Reznor through his – through his advisors and led to an opinion of counsel from Sidley and Austin that this was a legitimate transaction. Thank you. Thank you, Mr. Falk. Thank you. With regard to the discussion about Reznor's knowledge, whether this was in fact a 30-year loan, I think Judge Reimer's question accurately encapsulated it, that if Mr. Reznor knew that the plug could be pulled on the loan within a year, it was not a 30-year loan. And in that regard, I would simply direct the Court to page 40 of the Plaintiff's case, where they state, quote, And I think that admission in and of itself is sufficient to take this case to a jury. I would also point out that with regard to the Plaintiff's arguments about how this contract language supposedly fooled everybody, that was not the conclusion that the Eleventh Circuit reached in the Curtis case. It was not the conclusion that the district court in the Sussex case, which we submitted in the 28J letter, reached. And in fact, as I think it was Judge Reimer correctly noted, the Sidley letter says, hey, this loan can be pulled in a year. There's no question that Mr. Reznor either knew or must have known that this loan could be terminated in one year, hence it was not a 30-year loan. With regard to the point about the PSLRA, I did want to circle back on that, because I do think that this Court should enter judgment in our favor on RICO, on that threshold issue. In that respect, I wanted to highlight this Court's language in the Swartz decision. Again, the recent tax shelter case, this Court decided, where it quotes Zanford and it describes the test as asking whether, and I'm quoting from page 761 of the opinion, the question is whether, quote, the securities sales and the alleged fraudulent practices were independent events. That's the test. And I would submit that on this record, it is abundantly clear that Mr. Reznor's pledge of collateral, the securities, was not an independent event. To the contrary, it was a necessary integral part of the fraudulent scheme. There were approximately four steps in the card transaction that needed to occur. One of them was Mr. Reznor's pledge of collateral. That is what gave this transaction a patina of legitimacy. That's what's enabled Mr. Reznor to claim that this was a legitimate transaction. He pledged securities, which is treated as a sale under Supreme Court precedent, and that brings this case squarely within the ambit of the PSLRA. There's no way, there's no possible way Mr. Reznor could say that the sale of securities was somehow an independent event from the overall fraud. It was part and parcel of it. It was a necessary step. He pledged securities. It's undisputed. The only thing he can say is that securities were not required as part of the scheme. But that is immaterial under Zanford and Swartz. The question is, were securities used in the fraudulent scheme?  For that reason, we are entitled to judgment on RICO. With regard to the summary judgment issue, I think it's equally clear that this was a question for the jury. I think common sense confirms what the evidence in this case so powerfully demonstrates, that there was more than ample evidence from which a jury could reasonably have concluded that Mr. Reznor was well aware that this was not a legitimate business loan, but rather a fraudulent tax shelter. So we ask for judgment as to RICO. We ask for remand and a trial on the UCL. Unless the panel has further questions, we'll submit the case. Thank you, Mr. Dupree and counsel. Thank you for your argument. The matter just argued will be submitted.
judges: Trager, Alarcon, Rymer